**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF OKLAHOMA**

CHRISTOPHER HARTLEY, )
)
Plaintiff, )
)
vs. ) Case No.: 24-153-J
)
SCOTT BURGESS, in his individual )
capacity, *et. al.*, )
)
Defendants. )

**PLAINTIFF CHRISTOPHER HARTLEY'S RESPONSE TO
DEFENDANT CHIEF JAMES T. SMITH'S MOTION FOR
SUMMARY JUDGMENT AND BRIEF IN SUPPORT**

Plaintiff   Christopher Hartley respectfully submits his Response to Defendant James T.

Smith's Motion for Summary Judgement (Doc. 56) and Brief in Support pursuant to Fed. R. Civ.

P. 56 and LCvR 56.1.  In support, Plaintiff submits the following brief.

**BRIEF IN SUPPORT**
**STATEMENT OF THE CASE**

Christopher Hartley was arrested by the Lawton Police Department on charges of

assault with a firearm with intent to kill and booked into the Lawton City Jail on November

26, 2021.  Because the Lawton City Jail does not have any mental health professionals on site

and does not provide their corrections officers with any training to identify potentially suicidal

inmates, the Lawton City Jail relies entirely on inmates to self-report if they may be suicidal.

When Mr. Hartley was booked in at approximately 3:58 p.m., he did self-report that he was

experiencing suicidal ideations.  As a result, Mr. Hartley was placed in cell 19 on suicide

precautions.  This included being stripped of all his clothing, not being given a mat or blanket,

1

and being placed in a concrete cell with only an elevated concrete platform to sit on and a hole in floor.  Although he should have been provided with, at least, a paper gown to cover himself with, he was not because the Lawton City Jail did not have any at this time.

Mr. Hartley remained in cell 19, with no clothing, no mat, and no blanket, until approximately 5:06 p.m., when Defendant Scott Burgess decided he needed to move Mr. Hartley to cell 17 to place an incoming female inmate in cell 19.  As Defendant Burgess went to move Mr. Hartley, C.O. Tubbs suggested giving Mr. Hartley a blanket to cover up with because he was still naked.  Defendant Burgess declined to give Mr. Hartley a blanket, because based on his training at the Lawton City Jail, he believed it was appropriate to move a suicidal inmate while naked and that it would be a violation of policy to give Mr. Hartley a blanket while he was on suicide watch.  This was in spite of the fact that none of the C.O.'s on duty believed allowing Mr. Hartley to have a blanket to cover up with while he was being escorted from cell 19 to cell 17 posed any risk.

As Defendant Burgess went to move Mr. Hartley, Mr. Hartley asked if he could get clothes and he was told no.  Defendant Burgess then chuckled at Mr. Hartley and told him "let's go."  As a result, Defendant Burgess forced Mr. Hartley to move from cell 19 to cell 17, in full view of C.O. Tubbs, a female officer, C.O. Druce, and other inmates, specifically one that was in cell 18 at the time.  Because Mr. Hartley was not given anything to cover up with, he was forced to try and use his hand to cover his genitals while he walked through the booking area at the Lawton City Jail.

Mr. Hartley remained without any clothing until approximately 9:04 p.m. when he self-reported that he was no longer suicidal.  Again, because the Lawton City Jail does not have any mental health professionals on site and does not provide their corrections officers with

any training to identify potentially suicidal inmates, the Lawton City Jail relies entirely on individuals to self-report when they are no longer suicidal, even if they are only claiming to no longer be suicidal so that they can get clothes or a blanket or a mat. Once Mr. Hartley said that he was no longer suicidal and signed a form stating the same at approximately 9:10 p.m., he was given clothing by C.O. Druce. He was then given a blanket at approximately 1:50 a.m. and a mat at approximately 5:28 p.m. the following day, November 27, 2021.

Mr. Hartley was transferred to the Comanche County Detention Center on November 30, 2021, and he bonded out on May 8, 2022. This lawsuit was filed on November 20, 2023, while Mr. Hartley remained out on bond. During the time Mr. Hartley was out on bond, because of the tremendous mental stress this incident caused him, he received regular mental health treatment from Jim Taliaferro Mental Health Center. Mr. Hartley pled guilty to a lesser charge of assault and battery with a dangerous weapon and was sentenced to 10 years in the Department of Corrections. Mr. Hartley has continued receiving mental health treatment during his incarceration.

After Mr. Hartley was transferred to the Comanche County Detention Center, his wife submitted a complaint regarding his treatment at the Lawton City Jail. This complaint was investigated by Lawton City Police internal affairs Captain Mark Mason, where it was determined that Defendant Burgess violated Lawton City Jail policy by forcing him to move from cell 19 to cell 17 while he was naked. Specifically, the Lawton City Jail policy provided "All arrested persons booked into the Lawton City Jail will be treated with as much dignity as possible and with a minimum of embarrassment." Defendant Burgess received a forty-hour suspension. However, even after being disciplined for his conduct, Defendant Burgess still did not know what this specific Lawton City Jail policy meant and he was not provided

any training on it, other than the initial training he received on all of the Lawton City Jail policies which consisted only of the policies being read aloud for approximately two (2) to three (3) days. There was no test or anything else done to determine if Defendant Burgess knew and understood the policies.

In fact, even though Defendant Burgess was disciplined with a forty-hour suspension for moving Mr. Hartley naked from cell 19 to cell 17, Defendant Burgess maintains that this was an appropriate way to move an inmate, was the way he was specifically trained at the Lawton City Jail to move suicidal inmates, and contends that doing otherwise and giving Mr. Hartley a blanket or anything else to cover up with would actually have been a violation of Lawton City Jail policy.

**RESPONSE TO LCvR 56.1(b) STATEMENT**

1  Admit.

2  Admit.

3  Admit.

4  Admit.

5  Admit.

6  Admit in part. Mr. Hartley specifically asked Defendant Burgess for clothing before he was forced to move from cell19 to cell 17. Defendant Burgess told him no, chuckled and said "let's go." (Ex. "1," Deposition of Christopher Hartley, 49:16-25, 50:1-9).

7  Admit in part. C.O. Druce watched Mr. Hartley walk naked from cell 19 to cell 17 and although C.O. Tubbs stated she had her back to him, she still watched him as he walked behind her for her own safety. (Ex. "2," Investigation Report, p. 10; Exhibit "3," Deposition of Ian Druce, 12:18-20).

8 Admit in part. There was an inmate in cell 18 that Mr. Hartley had to walk past to get from cell 19 to cell 17. This inmate said a lot of derogatory things to Mr. Hartley after Defendant Burgess forced him to move cells naked and laughed at Mr. Hartley. There were also other inmates in the Lawton City Jail that laughed at Mr. Hartley afterward. (Ex. "1," 30:15-31:18; Ex. "4," Deposition of Scott Burgess, 22:5-6).

9 Admit.

10 Admit in part. When Mr. Hartley was finally given a blanket at approximately 1:50 a.m., the movie Moana was on the TV above cell 17 and the song "You're Welcome" happened to start playing, one of the C.O.'s working at that time turned the TV up so that Mr. Hartley could unmistakably hear the song. (Ex. "1," 40:4-24, 60:24-61:6; Ex. "2," p. 15).

11 Admit.

12 Admit that this is what was done by Lawton City Jail staff.

13 Admit.

14 Admit in part. Defendant Burgess' training regarding the Lawton City Jail policies consisted of sitting in a classroom and the group reading the policies to each other for a period of two (2) to three (3) days. There was no test or anything else done to confirm Defendant Burgess knew and understood the policies. Defendant Burgess was taught that moving an inmate naked, when they were on suicide watch, was the correct and appropriate way to move them. (Ex. "4," 32:18-33:19, 34:2-13).

15 Admit in part. C.O. Druce testified that he did not receive *any* training on how to move a suicidal inmate, including no on-the-job training. (Exhibit "3," 13:7-23).

16 Admit in part. C.O. Tubbs stated that she only received "a little bit" of training on suicide watch. (Exhibit "5," Deposition of Cheyanne Tubbs, 30:19-20).

Admit.

Admit.

Admit.

Admit.

## STATEMENT OF ADDITIONAL FACTS

Christopher Hartley served five (5) years in the United States Army and received a rank of E-5 Sergeant.  He received an honorable discharge due to an injury he suffered during his service.  (Ex. "1," 18:10-25, 21:22-24).

Mr. Hartley is a 100% disabled veteran.  (Ex. "1," 74:22-13).

The Lawton City Jail does not have any mental health professionals on site and does not provide their corrections officers with any training to identify if an inmate is potentially suicidal.  As a result, the Lawton City Jail relies entirely on inmates to self-report if they may be suicidal and even when they are no longer suicidal. (Ex. "3," 20:19-22:7, 22:12-18; Ex. "4," 38:18-39:23, Ex. "5," 31:20-32:22, 37:24-38:15; Ex. "6," Deposition of James Smith, 49:19-23).

C.O. Tubbs suggested to Defendant Burgess that he give Mr. Hartley a blanket to cover up with, so that he would not be moved in the open while naked. Defendant Burgess declined to give Mr. Hartley a blanket and moved him even though he was naked. (Ex. "4," 17:24-18:3, 23:6-10; Ex. "5," 14:2-13).

During the internal affairs investigation, C.O. Tubbs stated that Defendant Burgess "has problems like that" (referencing declining to give Mr. Hartley a blanket) and that he "would go out of his way to make inmates feel uncomfortable because he gets mad at him."  (Ex. "2," p. 10; Ex. "5," 22:3-7).

Based on the training Defendant Burgess received, he believed it was appropriate to move a suicidal inmate while naked.  In fact, Defendant Burgess believed it would have been a violation of policy to give Mr. Hartley a blanket while he was on suicide watch. (Ex. "4," 18:1-3, 23:6-10, 27:3-28:1, 34:2-13, 51:7-16).

None of the C.O.'s on duty-C.O. Druce, C.O. Tubbs, or Defendant Burgess-believed that allowing Mr. Hartley to have a blanket while he was moved from cell 19 to cell 17 posed a risk, other than Defendant Burgess believing that it would have been a violation of policy. (Ex. "3," 26:5-12; Ex. "4," 47:18-22, Ex. "5," 40:10-19).

Mr. Hartley specifically asked Defendant Burgess for clothes before he was moved from cell 19 to cell 17.  Defendant Burgess told him no, chuckled at him, and told him "let's go."  Thereby, forcing Mr. Hartley to move from cell 19 to cell 17 while he was naked.  (Ex. "4," 17:24-18:3, 55:22-56:5; Ex. "1," 26:5-13, 34:3-7, 49:16-50:9).

Mr. Hartley was mocked by the other inmates, in particular the inmate in cell 18 that watched him walk past naked.  This inmate said a lot of derogatory things to Mr. Hartley and laughed at him, because of this incident.  (Ex. "1," 29:25-30:18).

As a result of and due to the humiliation he suffered from being forced to walk through the booking area naked, Mr. Hartley attempted to cover his genitals with his hand. C.O. Druce, C.O. Tubbs, Defendant Burgess, and other inmates, specifically the inmate in cell 18 that Mr. Hartley had to walk right past, all watched Mr. Hartley walk naked from cell 19 to cell 17. (Ex. "1," 50:10-51:5; Ex. "3," 12:18-20; Ex. "4," 56:11-14; Ex. "5," 15:1-10).

This incident caused Mr. Hartley to suffer extreme embarrassment and humiliation, and significant mental health issues.  He continues to suffer from nightmares to this

day. Mr. Hartley received regular treatment for his mental health issues while he was out on bond from Jim Taliaferro Mental Health Center and continued receiving mental health treatment once he was incarcerated in the Department of Corrections. While he was out on bond he was prescribed Seroquel, Wellbutrin, Hydroxyzine, and Prazosin for his mental health issues. (Ex. "1," 35:24-36:17, 38:4-40:3, 42:5-43:12, 44:3-6, 101:21-102:1).

12 On March 1, 2022, Captain Mark Mason received the complaint from Mr. Hartley's wife, Alishia Hartley, that had been sent to Comanche County Detention Center regarding Mr. Hartley's treatment while he was incarcerated at the Lawton City Jail. (Ex. "2," p. 3 and 4).

13 After receiving the complaint, Capt. Mason forwarded the complaint to Capt. Robert Whittington and Chief James Smith. Capt. Whittingham pulled the camera footage and confirmed that Mr. Hartley was walked from one cell to another naked in the open for others to see. After confirming this one allegation, Capt. Mason informed Chief Smith and Chief Smith assigned Capt. Mason to take over the internal investigation of the incident. (Ex. "2," p. 4-5).

14 Ultimately, it was determined that Defendant Burgess' actions were in violation of Lawton City Jail policy and he received a forty-hour (40) suspension. Specifically, the policy provided "All arrested persons booked into the Lawton City Jail will be treated with as much dignity as possible and with a minimum of embarrassment." (Ex. "4," 42:23-43:8; Ex. "7," Administrative Investigation Disposition Report; Ex. "6," 30:5-31:1).

Even though Defendant Smith was concerned about C.O. Tubbs saying that Defendant Burgess "has problems like that" (referencing declining to give Mr. Hartley a blanket) and that he "would go out of his way to make inmates feel uncomfortable because he gets mad at him" he did not do anything with this information. Defendant Smith did not talk to C.O. Tubbs, Defendant Burgess, or anyone else regarding this statement. (Ex. "6," 33:11-13, 33:21-34:13).

The only training Defendant Burgess received on the Lawton City Jail policies and procedures consisted of roughly two (2) to three (3) days of the group taking turns reading the policies to each other until they had read through all of them. There was no test or anything else done to confirm they knew and understood the policies. (Ex. "4," 32:12-14, 32:18-33:4, 33:13-19).

Even after it was determined that Defendant Burgess had violated this specific policy and received the forty-hour (40) suspension, he still did not understand what this policy meant, what actions he took that had violated this policy, and he was not provided any additional training on what he had done to violate this policy or how to avoid violating it in the future. (Ex. "4," 42:23-44:10; Ex. "6," 31:16-19, 32:10-11).

C.O. Druce did not receive any specific training on what this policy meant either. He did not gain any further understanding of what that policy meant in regards to how to deal with inmates on a day-to-day basis during his employment and even after this incident with Mr. Hartley, he was not provided any additional training on this policy. (Ex. "3," 23:21-24:15).

At his Six (6) Month evaluation, which was conducted on September 20, 2021, it was noted that Defendant Burgess "has demonstrated performance that is below the standard position requirements; improvement is expected." (Ex. "2," p. 19-21).

Defendant Burgess was disciplined multiple times during his employment. Specifically, it was determined that on January 24, 2022, Defendant Burgess had failed to complete the required hourly visual sight checks between the hours of 1900 and 2250 of the jail and inmates, even though he had documented that he had completed them. Further, on January 18, 2024, Defendant Burgess was discharged effectively immediately for the use of excessive force on an inmate (Ex. "2," p. 22; Ex. "4," 13:16-15:10; Ex. "8", Notice of Discharge).

C.O. Druce received absolutely no training on how to move a suicidal inmate. In fact, even after this incident and after Defendant Burgess had been suspended for forty (40) hours, C.O. Druce would still have moved a suicidal inmate naked. (Ex. "3," 13:7-14:13, 15:7-10).

## ARGUMENT AND AUTHORITY

### SUMMARY JUDGMENT STANDARD

Rule 56(a) of the Federal Rules of Civil Procedure provides that "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. "A fact is material" if it "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* "Factual disputes that are irrelevant or unnecessary will not be counted." *Id.* Further, the nonmoving party "must do more than

simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586 (1986).

However, "at the summary judgment stage the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson*, 477 U.S. at 249. A court must examine the factual record in light most favorable to the party opposing summary judgment. *Wolf v. Prudential Ins. Co. of Am.,* 50 F.3d 793, 796 (10th Cir. 1995). Summary judgment is appropriate only "if the pleadings, depositions, answer to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgement as a matter of law." *Id.* (quoting Fed. R. Civ. P. 56(c)). Thus, the inquiry for this Court is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson,* 477 U.S. at 251-52.

### DEFENDANT SMITH'S PERSONAL PARTICIPATION IS SUFFICIENT TO DEFEAT SUMMARY JUDGMENT IN HIS INDIVIDUAL CAPACITY

As Defendant Smith correctly points out, in order for liability to arise under §1983, a defendant's direct personal responsibility for the claimed deprivation of a constitutional right must be established. *Novitsky v. City of Aurora,* 491 F.3d 1244, 1254 (10th Cir. 2007). Government officials may only be liable for their own misconduct. *Ashcroft v. Iqbal*, 556 U.S. 662, 677 (2009). To establish liability for an individual capacity claim, a plaintiff must show: (1) personal involvement, (2) causation, and (3) the requisite state of mind. *Dodds v. Richardson*, 614 F.3d 1185, 1195 (10th Cir. 2010).

In the present case, the Fourteenth Amendment's deliberate indifference standard applies. *Keith v. Koerner*, 843 F.3d 833, 848-49 (10th Cir. 2016); *Brown v. Flowers*, 974 F.3d 1178, 1182 (10th Cir. 2020). Deliberate indifference is comprised of two elements-an objective element and a subjective element. The first element requires Plaintiff to show that he was detained under conditions posing a substantial risk of serious harm. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). The subjective element requires a showing of a "sufficiently culpable state of mind," amounting to a "deliberate indifference" to a substantial risk of serious harm to an inmate. *Id.* The defendant "must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* At 837. *Schneider v. Grand Junction Police Dep't*, 717 F.3d 760 (10th Cir. 2013).

"A local government policymaker is deliberately indifferent when he deliberately or consciously fails to act when presented with an obvious risk of constitutional harm which will almost inevitably result in constitutional injury of the type experienced by the plaintiff." *Schneider*, 717 F.3d at 769. The action or inaction must be a deliberate and conscious choice by the government official when faced with an obvious risk of constitutional harm of the type experienced by the plaintiff. *Keith*, 843 F.3d at 848.

Here, Defendant Smith argues that "Plaintiff cannot demonstrate that Defendant Smith was deliberately indifferent to a substantial risk that LCJ inmates would be made to walk naked through the jail in front of other inmates and jail staff." Defendant Smith continues, "there is no evidence that Defendant Smith was aware of any substantial risk that [Defendant Burgess] might commit such violations. There is no evidence that [he] had previously committed any such violation which would have placed Defendant Smith on notice of the

existence of such a risk. Nor is there any evidence that Defendant Smith was subjectively aware of any prior, persistent pattern of such violations by jail staff in general."

However, Defendant Burgess specifically testified that based on the training he received at the Lawton City Jail that it was appropriate and proper to force a suicidal inmate to move from one cell to another while naked. (Additional Facts No. 6). In fact, Defendant Burgess believed, based on his training, that it would have been a violation to give Mr. Hartley a blanket or anything else to cover up with prior to moving him. (Additional Facts No. 6). Additionally, C.O. Druce did not receive *any* traning, at all, on the appropriate way to move a suicidal inmate. (Additional Facts No. 21). And, even after this incident and after Defendant Burgess had been suspended for forty (40) hours for moving Mr. Hartley from cell 19 to cell 17 while he was naked, C.O. Druce testified that he still believed moving a suicidal inmate naked was the proper way to do so at the Lawton City Jail. (Additional Facts No. 21). As such, the training provided to the Lawton City Jail corrections officers clearly provided a substantial risk that Mr. Hartley's civil rights would be violated.

Beyond the training and lack of training that was provided to the corrections officers at the Lawton City Jail, there were also specific issues with Defendant Burgess that should have put Defendant Smith on notice. During the internal affairs investigation into this incident, C.O. Tubbs stated that Defendant Burgess "has problems like that" (referencing declining to give Mr. Hartley a blanket) and that he "would go out of his way to make inmates feel uncomfortable because he gets mad at him." (Additional Facts No. 5). Defendant Smith admits that he read this and was concerned by this statement (and the entire incident), yet he did not do anything with this information. (Additional Facts No. 15). He did not speak to C.O. Tubbs. (Additional Facts No. 15). He did not speak to Defendant Burgess. (Additional

Facts No. 15). He did not speak to anyone regarding this statement. (Additional Facts No. 15).

Likewise, there were signs almost immediately that Defendant Burgess was not right for this job. At his six (6) month evaluation, which was conducted on September 20, 2021, it was noted that Defendant Burgess "has demonstrated performance that is below the standard position requirements, improvement is expected." (Additional Facts No. 19). Defendant Burgess was also disciplined multiple times during his employment at the Lawton City Jail. (Additional Facts No. 20). He was disciplined for not conducting the required hourly visual sight checks of the jail and inmates on January 24, 2022, between the hours of 1900 and 2250 even though he documented that he had. (Additional Facts No. 20). And he was ultimately terminated from his employment with the Lawton City Jail on January 18, 2024, for the use of excessive force on an inmate. (Additional Facts No. 20). Clearly, Defendant Burgess was a corrections officer that had immediate issues performing his job, these issues were not corrected, and this led to the violation of Mr. Hartley's civil rights.

Defendant Smith next contends that because the LCJ had implemented policies and practices aimed at preventing the sort of constitutional violations of which Plaintiff complains; specifically the policy that states, "All arrested persons booked into the Lawton City Jail will be treated with as much dignity as possible and with a minimum of embarrassment," that there is no evidence which would support a claim against him. However, Defendant Burgess testified that the ***only*** training he received on the entirety of the Lawton City Jail policies and procedures consisted of roughly two (2) to three (3) days of the group taking turns reading the policies to each other until they had read through all of them and there was not even a test or anything else done to confirm they knew and understood the policies

after they finished reading them to each other. (Additional Facts No. 16). Even after it had been determined that Defendant Burgess had violated this specific policy and been suspended for forty (40) hours, he still did not understand what this policy meant, what actions he took that had violated this policy, and he was not provided with any additional training on how to avoid violating it in the future. (Additional Facts No. 17). Likewise, C.O. Druce did not receive any specific training on what this policy meant and, even after this incident with Mr. Hartley, he was not provided any additional training so that he understood this sort of behavior was in violation of the Lawton City jail policies. (Additional Facts No. 17). Further, C.O. Druce received absolutely no training on how to move a suicidal inmate and even after this incident and after Defendant Burgess had been suspended for forty (40) hours, he still would have moved a suicidal inmate naked. (Additional Facts No. 21).

Based on the above, there are more than sufficient facts, when viewed in the light most favorable to Mr. Hartley, to show Defendant Smith's personal involvement and knowledge of the substantial risk of harm Defendant Burgess posed that Summary Judgment should be denied.

### DEFENDANT SMITH IS ENTITLED TO SUMMARY JUDGMENT IN REGARDS TO PLAINTIFF'S STATE LAW TORT CLAIM OF INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

Mr. Hartley agrees Defendant Smith is entitled to summary judgment on this particular claim.

### DEFENDANT SMITH IS NOT ENTITLED TO QUALIFIED IMMUNITY IN HIS INDIVIDUAL CAPACITY

Defendants sued in their individual capacities in an action under § 1983 "are entitled to qualified immunity unless it is demonstrated that their conduct violated clearly established

constitutional rights of which a reasonable person in their positions would have known." *Murrell v. Sch. Dist. No. 1*, 186 F.3d 1238, 1251 (10th Cir. 1999). As it has been discussed at length above that Defendant Smith's actions violated Mr. Hartley's constitutional rights, that point will not be belabored here.

"The law is clearly established if a reasonable official in the defendant's circumstances would understand that [his] conduct violated the plaintiff's constitutional rights." *Gomes v. Wood*, 451 F.3d 1122, 1134 (10th Cir. 2006). A right can be clearly established through a factually similar "Supreme Court or published Tenth Circuit decision" or through "the clearly established weight of authority from other courts." *Brown*, 974 F.3d at 1184 quoting *Perry v. Durborow*, 892 F.3d 1116, 1123 (10th Cir. 2018). A case directly on point is not required. *Mullenix v. Luna*, 577 U.S. 7 (2015).

It has been clearly established for some time in the Tenth Circuit that the public exposure of the nude body of a detainee is a violation of their civil rights. *Colbruno v. Kessler*, 928 F.3d 1155, 1163-1164 (10th Cir. 2019) (citing *Shroff v. Spellman*, 604 F.3d 1179, 1184 (10th Cir. 2010); *Hill v. Bogans*, 735 F.2d 391, 393 (10th Cir. 1984)). Likewise, Defendant Sheriff should have been aware that his conduct, as demonstrated above, in failing to properly train and supervise Defendant Burgess and in failing to ensure the policies and procedures of the Lawton City Jail were sufficient to protect Mr. Hartley would lead to a violation of his civil rights. In fact, the Defendants qualified immunity argument was specifically rejected in *Colbruno,* as it should be here. *Id.* at 1165-66. Based on the above, Defendant Smith is not entitled to qualified immunity.

# CONCLUSION

WHEREFORE, based on the above and foregoing, Plaintiff Christopher Hartley respectfully requests this Court deny Defendant James T. Smith's Motion for Summary Judgment and Brief in Support.

Respectfully submitted,

Eric D. Cotton, OBA #20658
THE COTTON LAW FIRM, PLLC
3415 E. 44th St.
Edmond, Oklahoma 73013
Telephone: (405) 285-0816
Facsimile: (405) 285-1409
E-mail Address for service:
eric.cotton@thecottonlawfirm.com
Attorney for Plaintiff

# CERTIFICATE OF SERVICE

I hereby certify that on January 9, 2026, I electronically transmitted the attached document via the ECF filing system to:

W.R. Moon, Jr.
Chris J. Collins
**Attorney for Defendant James T. Smith**

Jessica L. Dark
Sheila G. Jessee
Robert S. Lafferandre
**Attorneys for Defendant Scott Burgess**

Eric D. Cotton